Argued December 4, reversed and remanded December 16, 1970

# PACIFIC PINES CONSTRUCTION CORPORA-
# TION, *Appellant, v.* YOUNG, *Respondent.*

477 P2d 894

*Donald A. Loomis*, Eugene, argued the cause for appellant. With him on the brief were Jaqua, Wheatley & Gardner, Eugene.

*Jon A. Joseph*, Eugene, argued the cause for respondent. With him on the brief were Bick, Monte, Joseph & McCool, Eugene.

Before O'CONNELL, Chief Justice, and DENECKE, TONGUE and BRYSON, Justices.

TONGUE, J.

This is a suit for an injunction to restrain defendant from violating a contract. Plaintiff appeals from a decree dismissing the suit after a demurrer had been sustained to plaintiff's third amended complaint and plaintiff had declined to plead further.

The sole issue to be decided is whether the contract was invalid upon the ground that it was lacking in consideration and in mutuality of obligation.

The contract, dated December 9, 1968, recited that plaintiff was engaged in the construction of homes and desired to obtain the exclusive services of defendant, dba "Northwest Designers," to prepare plans, solicit bids from contractors and supervise construction. For defendant's services plaintiff agreed to pay both a fixed fee "per house sold and accepted by the company" and also a "potential bonus," to "encourage the continuation of the profitable relationship between the parties." The "potential bonus" was to be payable at the end of each year "during the duration of this agreement" if the "relationship" was "continuing at that time." A formula was provided for the purpose of determining whether a bonus would be payable at the end of each year and, if so, the

amount of such a bonus, depending upon whether plaintiff made a specified minimum "expected profit" for that year. The agreement was to continue for a period of five years and provided that if it was terminated prior to its expiration date (except for material breach by plaintiff) defendant would not compete with plaintiff within a designated area for a period of 14 months and would not discuss the affairs of plaintiff company "during the period of the agreement and for a period of two years thereafter."

The complaint alleges that both of the parties proceeded with performance under the contract; that defendant designed eight houses for which he was paid by plaintiff the amount due under the contract and that plaintiff also advanced $7,046.20 to defendant for work to be performed later by defendant under the contract. Finally, the complaint alleges that after one year, and "for reason(s) other than material breach of the contract by plaintiff," defendant terminated the relationship and then proceeded to compete with plaintiff within the designated area and to discuss the affairs of the company and to reveal confidential information, all in violation of the agreement.

Defendant contends that the contract is void for lack of mutuality and lack of consideration because it included no provisions requiring plaintiff to "maintain the relationship"; that plaintiff's only duty was to pay for plans it chose to accept, and this was an "illusory promise." Defendant also contends that any promise for payment of the "potential bonus" was also "illusory" because it was dependent upon the "continuance of the relationship," which "remains in the sole discretion of the plaintiff." In support of this contention defendant cites *Corbitt v. Salem Gas-*

*light Co.*, 6 Or 405 (1876); *Lemler v. Bord*, 80 Or 225, 156 P 427 (1916), and 1 Corbin, Contracts §§ 145 and 149.

Subsequent to the decision of the trial court sustaining defendant's demurrer to the plaintiff's third amended complaint, this court announced its decision in *Furrer v. International Health Assurance Co.*, 256 Or 429, 474 P2d 759 (1970). That case involved an agency agreement between an insurance company and an individual who was engaged to develop its insurance business. The contract was to continue from year to year, subject to termination under specified conditions. The agent was to be paid a graduated percentage of commissions based on total sales. The contract provided, however, that he was only "to spend such time as he personally saw fit" to the development of the business. After service for several years, the agent was discharged by the company contrary to the termination provisions of the contract. He then demanded damages for loss of future commissions.

In *Furrer* this court affirmed such an award of damages. In doing so the court rejected defendant's contention that such a contract was unenforceable insofar as it remained executory for the reason that by its terms plaintiff was required to devote only such time as he "personally saw fit" to devote to performance of the contract and thus was not *required* to perform any duties whatever, resulting in a complete lack of consideration and mutuality of obligation.

In rejecting these contentions, together with authorities cited in support of such contentions, this court held as follows:

"We believe that a case more in point is *Wood v. Lucy, Lady Duff-Gordon*, 222 NY 88, 118 NE

214 (1917). The defendant was a fashion designer whose endorsements on products increased their value and sales. The defendant employed plaintiff to place her endorsements on designs for one-half the profits. The exclusive right was to last one year and thereafter from year to year unless terminated by 90 days' notice. The defendant withheld the profits on some sales and plaintiff sued for damages for breach of contract. The defendant contended that the agreement lacked the elements of a contract because the plaintiff had not actually bound himself to spend any time promoting or selling defendant's endorsement. The court stated:

'It is true that he does not promise in so many words that he will use reasonable efforts to place the defendant's indorsements and market her designs. We think, however, that *such a promise is fairly to be implied.* The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today.' 118 NE at 214.

"A similar argument of lack of consideration and illusoriness in an agreement to manufacture and market a product was raised in *Perma Research and Development Co. v. Singer Co.,* 410 F2d 572 (2d Cir 1969). Relying on *Wood v. Lucy, Lady Duff-Gordon, supra,* the court stated:

'* * * Equally frivolous is the argument based on illusoriness, since *Singer was obligated to use its best efforts to manufacture and market the product even if the agreement did not expressly say so.*' 410 F2d at 574, n 8.

"Professor Corbin states the following concerning mutuality of obligation in contracts:

'Mutuality of obligation should be used solely to express the idea that each party is under a legal duty to the other; each has made a promise and each is an obligor.' 1A Corbin, Contracts § 152, p 4.

"Regarding lack of mutuality in sales agency agreements, Professor Corbin further states:

'Often a sales agency contract does not fix the amount of goods or the number of articles that the agent must take or sell. These exigencies of business often require that this must be left flexible, so that it may vary with general business conditions and with manufacturing needs and difficulties. Such a contract usually contains various subsidiary promises on both sides. Such subsidiary promises are sufficient consideration for any return promises, so that the contract should not be held void for lack of 'mutuality.' *Promises by the agent to advertise and to promote sales with diligence and by the manufacturer to supply goods to any reasonable extent as ordered are readily to be found by implication.* These implied promises also are sufficient consideration and are not so indefinite or uncertain as to be unenforceable.' 1A Corbin, *supra*, § 155, p 25.

"See also *Medak v. Hekimian*, 241 Or 38, 404 P2d 203 (1965), and *Temple Enterprises v. Combs*, 164 Or 133, 100 P2d 613 (1940)." (Emphasis added)

In *Temple* this court held, at p 154:

"* * * The question of mutuality of obligation is disposed of by our conclusion that the contract is supported by a valuable consideration and is the written memorial of the agreement actually made by the parties."

In *Medak*, at p 42, we approved the following rule:

"In 1 Williston, Contracts, (3rd ed.) 454, § 115, it is said:

'It is an 'elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration.' This rule is almost as old as the law of consideration itself.

> Therefore anything which fulfills the require-
> ments of consideration will support a promise
> whatever may be the comparative value of the
> consideration, and of the thing promised.
> * * *' "

From the foregoing it appears that in *Furrer*
this court, after considering the contract as a whole,
together with the circumstances under which it was
negotiated, found consideration and mutuality of
obligation by the process of finding that a promise
by the agent to use his "best efforts" and "reason-
able efforts" to promote the business of the insur-
ance company was "fairly to be implied." Indeed,
such an implied promise was found to exist despite
an express contract provision that the agent was
only required "to spend such time as he personally
sees fit" to the business of the insurance company.

The contract in this case does not include any
express provision reserving to the company the right
to abandon the project at any time. Thus, in the ab-
sence of such a provision, a promise by plaintiff com-
pany to use its "best efforts" and "reasonable efforts"
to promote this construction project during the five-
year period of the contract, so as to earn sufficient
profits to require bonus payments to defendant each
year, may well be fairly implied in this case when
the terms of the contract are considered as a whole
and in the light of all of the circumstances under
which it was negotiated.

We hold, however, that such a determination
cannot be made properly in this case upon an exam-
ination of the contract terms alone, that being the
manner in which the question was presented on de-
murrer. Accordingly, we hold that the court erred

in sustaining the demurrer and that this case must be remanded for trial in order that evidence may be offered by both parties relating to the circumstances under which this contract was negotiated. See *Watson Bros. Transp. Co. v. Jaffa,* 143 F2d 340, 348 (8th Cir 1944). See also 3 Corbin, Contracts 287, 293, §§ 562, 564. Such evidence is not inadmissible by reason of the parole evidence rule because its purpose is not to vary or contradict the terms of the contract, in the absence of any express provision to the contrary.

A determination can then be made whether or not a promise by plaintiff company to use its best efforts to promote this construction project during the five-year term of the contract can be fairly implied. In such an event, there would be sufficient consideration and mutuality of obligation to make binding defendant's promise not to compete or to divulge confidential information.

In so holding we expressly limit our decision to a determination of the question whether the contract between the parties was invalid for lack of consideration and mutuality of obligation under the terms of the contract and the facts as alleged by plaintiff's complaint, that being the sole issue presented by the parties for decision on this appeal.

Neither *Corbitt v. Salem Gaslight Co.,* 6 Or 405 (1876), nor *Lemler v. Bord,* 80 Or 225, 156 P 427 (1916), as relied upon by defendant, require a contrary result, but stand only for the general proposition that a contract lacking in consideration and in mutuality of obligation is invalid and unenforceable. As for defendant's reliance upon 1 Corbin, Contracts §§ 145, 149, it may be true, as stated by Corbin (§ 149, p 658) that "words of condition may be so chosen

that there remains an unlimited option and totally unrestricted freedom of action." The "words of condition" in this contract, however, do not reserve to plaintiff such an "unlimited option" and "totally unrestricted freedom of action." On the contrary, plaintiff's conditional promise to pay an annual "potential bonus" to defendant would appear to fall instead within the further rule, as stated by Corbin (§ 149, at pp 659-660) that:

> "It is very clear indeed that promissory words are not nullified by making the promise conditional on some event within the promisor's own power, if at the same time he impliedly promises to make reasonable effort to bring the event about or to use good faith and honest judgment in determining whether or not it has in fact occurred. When words are put in promissory form, courts are loath to give them an interpretation that makes them empty in fact and misleading to others."

See also 2 Restatement, Contracts 96, § 84 (f).

As also stated by Justice Cardozo in *Wood v. Lucy, Lady Duff-Gordon, supra* (as relied upon by this court in *Furrer*), at p 215:

> "* * * His promise to pay the defendant one-half of the profits and revenues resulting from the exclusive agency and to render accounts monthly was a promise to use reasonable efforts to bring profits and revenues into existence. * * *"

Reversed and remanded.